Mills et al., Appellants, *v.* Garlitz.

Argued April 11, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Samuel J. Goldstein,* for appellants.

*Robert S. Grigsby,* with him *Thomas F. Weis,* and *Pringle, Bredin & Martin,* and *Weis & Weis,* for appellees.

OPINION BY MONTGOMERY, J., June 15, 1961:

As a result of a collision between two automobiles at a right angle intersection in the City of Pittsburgh on the early morning of December 7, 1957, the two actions of trespass from which these appeals arose were filed by Harry Mills, driver of one of the cars, and by Samuel Whitmore, a passenger in the same car. The actions were brought against Kurt Roberts, a minor, who was the driver of the other car. In the Whitmore

suit, Mills was subsequently joined as an additional defendant.

The streets forming this intersection were Fulton Street and Western Avenue, the latter being designated a through street with stop signs in place commanding traffic on Fulton Street to stop before entering it. Mills was driving south on Fulton Street and was confronted by the stop sign. Roberts was traveling east on Western Avenue. The accident occurred in the intersection in the eastbound lane for Western Avenue, by the right front of the Roberts' car striking the right rear fender of the Mills' car. The jury returned a verdict in favor of Whitmore and against both Mills and Roberts for $600.00. In the Mills' case the verdict was for the defendant, Roberts. Whitmore and Mills as plaintiff, each filed a motion for a new trial and both motions were refused by the lower court. These appeals followed.

The only question in the Whitmore appeal is the adequacy of his verdict. The only question in the Mills' case is the sufficiency of the evidence to sustain the verdict for the defendant, Roberts.

Considering first the Whitmore appeal, we note that his injuries were described by Dr. Grunnagle, who saw him on the morning of the accident after he had been admitted to the Allegheny General Hospital, as follows: "He was in bed at the time . . . he showed nothing of a particular note on physical examination except that he had a laceration of the scalp; he had a history of having been unconscious following the accident; and he had some abrasions on his legs. So, a diagnosis was made of cerebral concussion, abrasion of the legs, and laceration of the scalp . . . He was conscious . . . I don't recall [any pain] . . . he was kept quiet and then ambulated gradually and, of course, his incision had been sutured, his wound had been sutured and the sutures were removed and he was discharged on the

fourth day." He was discharged with the following record made: "Local condition good, general condition good, and prognosis good." The doctor's bill was $15.00 and the hospital's bill was $84.00.

At the trial Whitmore testified that he had two teeth knocked out, roots and all, and one broken off in the accident. He offered proof by a dentist, Dr. Primas, that as a result thereof he needed dental work, including dentures, at a cost of $530.00. However, in view of the fact that he did not consult the dentist until October 10, 1959, almost two years after the accident, when an examination made by the dentist indicated an extremely poor condition in his mouth about which no complaint had previously been made to anyone, it is very reasonable to assume that the jury disbelieved that the accident had anything to do with the condition of his mouth and teeth. Likewise, with his claim for lost wages from being out of work for four weeks after the accident, the jury might well have disbelieved him when he said he was unable to work and had to walk with the aid of a cane for that period, after he had produced testimony from Dr. Grunnagle, his own witness, that after being given bedrest for three days in the hospital he had been discharged in good condition.

Therefore, limiting the results of the accident to those described by Dr. Grunnagle, with a $15.00 doctor bill and an $84.00 hospital bill, an award of $600.00 does not shock our conscience.

Insofar as the appeal of Mills is concerned, we find no merit in it. In *MacDougall v. Chalmers*, 192 Pa. Superior Ct. 401, 404, 162 A. 2d 51, 53, this Court recently said: "Appellee was required to grant to appellant the right of way and before entering into the through street to stop, not only at the stop sign, but at the intersection itself. . . . From that point he was required to look in both directions to satisfy himself

that his crossing could be made in safety, and thereafter, as he proceeded, to continue to look and at all times have his car under such control that it could be stopped at any moment and a collision avoided." In that case we found the appellee chargeable with contributory negligence as a matter of law. In the present case the lower court permitted the jury to pass on the question, which was to the advantage of the appellant. The testimony of Mills given on cross-examination is to the effect that he stopped at the stop sign but could not see to his right on account of a wall; he then pulled forward so that the front of his car was two feet beyond the sign and he stopped again; at this point he could see three hundred feet to his right (there were no cars parked in that direction to interfere with his vision); at this point he saw headlights moving, going up and down in the rain, and getting closer; he proceeded to the middle of the street (Western Avenue is 35 feet wide), he saw the lights again getting closer, but nevertheless he proceeded at 15 miles an hour from that point without stopping again, and he was struck as the rear of his car crossed the center line of the street. On this testimony he could well have been charged with negligence as a matter of law. Nevertheless, this testimony supports solidly the verdict for the defendant and indicates nothing to justify the granting of a new trial to appellant Mills.

The judgments are affirmed.